**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RAUL MENDOZA, | No. 2:24-CV-2964-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 6, 15, and 16, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the Court are the parties' briefs on the merits, ECF Nos. 10 and 12.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

1

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

/ / /

Step 4   If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5   If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on February 17, 2022.  See CAR 17.[1] In the application, Plaintiff claims disability began on July 16, 2021.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on December 1, 2023, before Administrative Law Judge (ALJ) Joseph Marcee.  In a January 2, 2024, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1.  The claimant has the following severe impairment(s): diabetes mellitus, peripheral neuropathy, degenerative disc disease of the lumbar spine, and degenerative joint disease of the bilateral knees;

2.  The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.  The claimant has the following residual functional capacity: the claimant can perform sedentary work; he can frequently balance, crouch, and kneel; he can occasionally crawl and stoop; he cannot climb ladders, ropes, or scaffolds; the claimant cannot be exposed to extreme cold or hazards; the claimant requires a cane to ambulate; the claimant cannot climb stairs; he can occasionally climb ramps; the claimant needs to be able to alternate positions between sitting and standing at will, while the total time spent standing and/or walking will not exceed two hours in an eight-hour workday;

4.  Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant is able to perform his past relevant work as a warehouse manager.

See id. at 19-25.

After the Appeals Council declined review on September 27, 2024, this appeal followed.

///

///

///

///

///

---

[1]  Citations are to the Certified Administrative Record (CAR) lodged on December 20, 2024, ECF No. 7.

4

### III.  DISCUSSION

In his opening brief, Plaintiff argues: (1) the ALJ rejected the opinions of Plaintiff's treating physician, Dr. Patel, without providing sufficient reasons for doing so; (2) the ALJ failed to provide sufficient reasons to reject Plaintiff's subjective statements and testimony; (3) the ALJ failed to address all of Plaintiff's impairments in determining residual functional capacity; and (4) the ALJ's conclusion that Plaintiff can perform his past relevant work is not supported by substantial evidence.  See ECF No. 10, pg. 2.

### A.    Evaluation of Opinions Offered by Plaintiff's Treating Physician

"The ALJ must consider all medical opinion evidence."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874

F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017.  See 20 C.F.R. §§ 404.1520c, 416.920c.  These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source.  See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]").  Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources.  See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness."  See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)).  In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors:  supportability, consistency, treatment relationship, specialization, and "other factors."  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)).  Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies.  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors."  See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical

6

finding(s), the more persuasive [the opinion] will be." See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)). "For consistency, the regulations state: '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)). "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

At Step 4, the ALJ considered the following medical opinions of record in determining Plaintiff's residual functional capacity: (1) agency non-examining medical consultants, Drs. K. Mohan and H. Jone; (2) agency examining medical consultant, Dr. Sharma; and (3) Plaintiff's treating physician, Dr. Patel. See CAR 22-24. Plaintiff argues the ALJ erred in rejecting opinions offered by Dr. Patel. See ECF No. 10, pgs. 14-15.

As to Dr. Patel, the ALJ stated as follows:

> Nishant Patel, M.D., in a form dated November 16, 2023, opined, in part, that the claimant could occasionally and frequently lift less than ten pounds, stand/walk for less than two hours, sit for two hours, needs to change positions at will, will lie down at unpredictable intervals, occasionally twist, stoop, crouch, and climb, can push/pull ten pounds for no more than five minutes, should avoid all exposure to temperature extremes, wetness, humidity, and hazards, needs a walker for ambulation, and would miss more than four days of work per month (Ex. 10F). The undersigned is not persuaded by the opinion of Dr. Patel. Such opinion is supported by a narrative that does not articulate the need for all limitations opined by Dr. Patel (Ex. 10F). In addition, such opinion states that the claimant has been as limited as opined by Dr. Patel since January 2020, while the claimant continued to work above substantial gainful activity levels until July 2021, and Dr. Patel stated that he only started seeing the claimant in February 2023 (Exs. 5D; 10F). Dr. Patel's opinion is also not supported by his treatment notes of the claimant, which do not show findings in line with the limitations opined by Dr. Patel (Ex. 8F). Further, Dr. Patel's opinion is inconsistent with the examination of the claimant by Dr. Sharma (Ex. 3F). Dr. Patel's opinion is also inconsistent with other physical examinations that show that the claimant is not as limited as opined by Dr. Patel (Exs. 2F/9, 19-20; 5F/15).

CAR 24.

///

7

Plaintiff argues, in essence, that the ALJ's conclusion is flawed because Dr. Patel was Plaintiff's treating physician and the ALJ relied on an inconsistent opinion from a one-time examiner, Dr. Sharma.  See ECF No. 10, pgs. 14-15.  According to Plaintiff:

> The ALJ gives general statements rather than citing to the record.  He states Dr. Nishant Patel's opinion is inconsistent with that of CE Sharma.  However, this comparison is inadequate as CE Charma was a one-time evaluation made without any other medical records (AR 368).
>
> ECF No. 10, pgs. 14-15.

This argument is unpersuasive as it appears to apply the standard of evaluation under the old regulations and applicable caselaw which provided a hierarchy of medical opinions, with those from treating sources at the top and those from non-examining sources at the bottom.  The new regulations impose no such hierarchy and treat the opinions from all medical sources the same subject to supportability and consistency factors.  See Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022).

Turning to the ALJ's evaluation of Dr. Patel's opinions in the context of the new regulations, the Court finds no error.  The ALJ provided the following reasons for rejecting Dr. Patel's opinions: (1) the opinion is supported by a narrative which does not explain the findings; (2) the opinion is inconsistent in that Dr. Patel opined that Plaintiff has been as limited as the doctor describes since 2020, but Plaintiff continued substantial gainful activity through the alleged onset date in July 2021, and the doctor did not begin treatment with Plaintiff until 2023; (3) Dr. Patel's opinion is not supported by the doctor's own treatment notes; and (4) Dr. Patel's opinion is inconsistent with the opinion of examining consultant, Dr. Sharma.  See CAR 24.  The Court finds that each of these reasons is supported by substantial evidence in the record.

The ALJ observation that Dr. Patel's opinion is not supported by the narrative provided by the doctor is sound.  Dr. Patel's opinion is contained in the record at Exhibit 10F.  See CAR 496-498.  For "Diagnosis," Dr. Patel states: "Severe lumbar arthritis/disc degeneration with anterior wedging at L2-L3 and left knee arthritis with weakness in left leg."  CAR 496.  For "Clinical Findings," Dr. Patel states "As above."  Id.  Dr. Patel, however, does not state which specific clinical findings on objective testing support his opinions.  More to the point, the doctor's

8

opinion does not cite to any objective testing data.

The ALJ also noted an inconsistency between Dr. Patel's opinion and the dates of alleged onset of disability and treatment with the doctor.  Specifically, while Dr. Patel opined that Plaintiff has been as limited as he describes since January 2020, see CAR 198, Dr. Patel also states that he did not begin treatment with Plaintiff until February 2023, see CAR 496.  Further, Plaintiff alleges that his disability began in July 2021, and the record indicates that Plaintiff engaged in substantial gainful activity through 2021.  See CAR 203 (Exhibit 5D reflecting that Plaintiff earned $51,585.17 in 2021).

The ALJ also accurately observed that Dr. Patel's opinions are not supported by the doctor's treatment notes.  Dr. Patel's treatment notes are contained in the record at Exhibit 8F. See CAR 420-65.  On February 13, 2023, Dr. Patel noted on physical examination that Plaintiff's gait and station were normal and that Plaintiff had no limitations with ambulation.  See CAR 447. Dr. Patel made the same observation on March 14, 2023, see CAR 443, April 5, 2023, see CAR 438, May 3, 2023, see CAR 433, and June 14, 2023, see CAR 429.  These observations, which remained unchanged throughout the timeframe of the treatment record provided, do not support Dr. Patel's opinion that Plaintiff can stand and walk less than two hours in an eight-hour workday.  Nor do these observations support the doctor's conclusion that Plaintiff requires a walker to ambulate.

Finally, as the ALJ noted, Dr. Patel's opinions are indeed inconsistent with those offered by examining consultant, Dr. Sharma, who opined consistent with the residual functional capacity outlined by the ALJ.

**B.      Evaluation of Plaintiff's Subjective Statements and Testimony**

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the Court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify

what testimony is not afforded weight and what evidence undermines the testimony.  See id.

Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's

reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also

Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue,

504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the

Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged,

including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

947 F.2d at 345-47.  In weighing a claimant's statements and testimony, the Commissioner may

also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other

inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to

follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and

(5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See

Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

claimant cooperated during physical examinations or provided conflicting statements concerning

drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

claimant testifies as to symptoms greater than would normally be produced by a given

impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

In determining Plaintiff's residual functional capacity at Step 4, the ALJ considered Plaintiff's own subjective statements and testimony.  The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant reported that he was unable to work because of, in part, diabetes, weak legs/knees, and trouble walking/climbing/standing (Ex. 2E/2). He indicated that he had fatigue and was unable to bend down to pick up items on the floor (Ex. 4E/3). He noted that he could only walk for up to a half mile and that it caused exhaustion and knee pain (Ex. 4E/3). He reported that he did not climb stairs (Ex. 4E/4). He indicated that he could lift small packages and drive a car for a maximum of thirty minutes (Ex. 4E/4).
>
> The claimant testified that he is unable to work because of leg pain. He testified that he puts excess pressure on his right leg compared to his left leg. He testified that he uses a cane whenever ambulating. He testified that he started physical therapy in the beginning of 2023, and while it has gone well, he still has problems with his foot. He testified that he sits for most of the day. He testified that he tries to combine all chores outside of the house in one trip per week that he does himself. He testified that he could stand for a half [hour] and walk or sit for fifteen minutes before he needs to change positions. He testified that on bad days, he would not try to stand. He testified that he has two good days per week. He testified that he has also received cortisone injections, takes medication for diabetes mellitus, but does not take pain medication. The claimant testified that he stopped working on the day that the company he worked for closed.
>
> CAR 21.

The ALJ concluded that Plaintiff's statements and testimony ". . .are inconsistent with the overall evidence, which shows that the claimant is not as limited as alleged." Id.  The ALJ then discussed the objective evidence and detailed instances where the record belied Plaintiff's allegations.  See id. at 21-22.  Notably, as to Plaintiff's testimony that he needed to use a cane to ambulate, the ALJ observed that Plaintiff did not use a cane when seen by Dr. Sharma in June 2022.  See id. at 22.  The ALJ also cited the treatment notes from Dr. Patel at Exhibit 8F (discussed above) showing that, throughout the time Plaintiff treated with Dr. Patel, the doctor observed that Plaintiff's station and gait were normal and that Plaintiff had no trouble with ambulation.  The Court finds that the ALJ sufficiently linked the testimony found unpersuasive with the objective evidence supporting the conclusion.  Additionally, the Court finds that the ALJ's analysis is supported by substantial evidence in the record.

///

11

### C.    Consideration of All of Plaintiff's Impairments

Plaintiff contends that the ALJ failed to consider the limiting effects of the combination of his diabetic retinopathy and diabetic neuropathy when determining Plaintiff's residual functional capacity at Step 4.  See ECF No. 10, pgs. 12-14.  In support of this contention, Plaintiff cites to 20 C.F.R. § 404.1529(d), which requires the ALJ to consider all of a claimant's impairments in combination in determining whether such impairments meet or medically equal the Listing of Impairments at Step 3.  Thus, Plaintiff's citation to a rule applicable at Step 3 is inapposite to Plaintiff's argument that the ALJ failed to consider all of Plaintiff's impairments at Step 4.

In any event, a review of the ALJ's reflects that the ALJ considered limitations associated with diabetic retinopathy and diabetic neuropathy.  According to Plaintiff, diabetic retinopathy "can steal your vision."  At Step 2, the ALJ determined that Plaintiff's vision loss resulting from diabetic retinopathy does not significantly limit Plaintiff's ability to perform basic work activities and, as such, is non-severe.  See CAR 20.  Plaintiff does not challenge this finding.  Given that Plaintiff's vision impairment resulting from diabetic neuropathy was found to be non-severe, the ALJ was not required to describe limitations associated with vision in outlining Plaintiff's residual functional capacity at Step 4.  In this regard, the Court notes that none of the doctors who submitted opinions in this case – Drs. Mohan, Jode, Sharma, and Patel – opined as to any limitations relating to Plaintiff's vision.  As to diabetic neuropathy, the ALJ specifically considered this impairment at Step 4: "Further, in consideration of peripheral neuropathy, the undersigned adopted environmental limitations for the residual functional capacity."  CAR 23.

### D.    Vocational Finding

In this case, the ALJ concluded at Step 4 that Plaintiff can perform his past relevant work as a warehouse manager.  See CAR 24-25.  The ALJ stated as follows:

> The vocational expert testified that the claimant has past work as a warehouse manager (Dictionary of Occupational Titles (DOT) #185.167-018, sedentary as generally and actually performed, skilled at Specific Vocational Preparation (SVP) level 6). In order to be considered past relevant work, a job must have been performed within the past fifteen years, lasted long enough for the individual to learn how to do the job, and

been substantial gainful activity (20 CFR 404.1560(a)(1) and 416.960(a)(1)). The claimant completed a Work History Report asserting that he worked as a warehouse manager from January 1999 through July 2021, a significant portion of which occurred during the last fifteen years (Ex. 3E). Based on the vocational expert's testimony and the claimant's Work History Report, as referenced above, the time the claimant spent working as a warehouse manager meets the duration requirement (Dictionary of Occupational Titles Fourth Ed., Appendix C). Finally, the claimant's earnings record shows that the claimant worked as a warehouse manager at the level of presumptive substantial gainful activity as defined by our Regulations for the required duration (Ex. 4D). Because all three requirements have been satisfied, the undersigned therefore considers the claimant's past work as a warehouse manager to be past relevant work.

Upon questioning by the undersigned, the vocational expert testified that if an individual had the claimant's residual functional capacity, such an individual could perform the claimant's past relevant work as a warehouse manager. Therefore, the undersigned finds that the claimant could perform his past relevant work as a warehouse manager, as generally performed.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT). The undersigned notes that the DOT is silent regarding the sit/stand limitation contained in the residual functional capacity. The undersigned credits the testimony of the vocational expert that the claimant could perform the above-listed position in consideration of the residual functional capacity posed at the hearing based upon his education and experience and credits such testimony of the vocational expert (Ex. 12E). The undersigned further notes that the claimant's representative had the opportunity to and did ask questions of the vocational expert at the hearing.

CAR 24-25.

Plaintiff argues that he cannot do his past relevant work, either as actually or generally performed. See ECF No. 10, pgs. 9-12. Because the ALJ did not find that Plaintiff can engage in past relevant work as actually performed, the Court focuses on Plaintiff's argument concerning his past relevant work as generally performed. In this regard, Plaintiff contends:

SSR [Social Security Ruling] 24-2p defines Past Work as generally performed:

When we determine whether an individual can perform their PRW [past relevant work] as it is generally performed in the national economy, we consider whether the individual retains the capacity to perform the occupation's functional demands as ordinarily required throughout the national economy.

///

> We may rely on descriptions of occupations from reliable sources of job information to determine how occupations are generally performed. A vocational specialist or vocational expert may also provide information about how an occupation is generally performed in the national economy.

> The Vocational Expert defines Mr. Mendoza's warehouse manager [job] as DOT [Dictionary of Occupational Titles] 185.167.018 (AR 50-51). The DOT requirements of a warehouse manager include frequent[] clarity of vision at 20 inches or less. (Attached Exhibit A). The ALJ notes Mr. Mendoza's uncorrected vision is 20/30 in the right eye and 20/60 in the left eye. His corrected vision is 20/40 bilaterally with glasses (AR 20). Mr. Mendoza has less than 20/20 vision even with correction.

> The Vocational Expert states there would not be work in the economy which could be performed if there were standing and walking limitations of less than two hours or if there were two additional 15-minute breaks (AR 50-51). As further discussed below the RFC does not address the other limitations. Even within this RFC the ALJ has not explained how Mr. Mendoza would be able to work a job where he would not be able to stand up, pick up items, or take more than the standard breaks. As such, the ALJ has not provided evidence Mr. Mendoza could perform his past work as. . . generally performed. Therefore, the ALJ's findings are not supported by substantial evidence.

> ECF No. 10, pgs. 11-12.

Thus, Plaintiff contends he is unable to engage in past relevant work as generally performed due to limited vision and "other limitations" associated with stand/walk restrictions and the need for additional 15-minute breaks.

Plaintiff's argument is unpersuasive as to limitations in vision. As the ALJ noted, Plaintiff's uncorrected vision is 20/40 in the right eye, 20/60 in the left eye, and 20/40 bilaterally with glasses. See CAR 20. The ALJ concluded that Plaintiff's vision impairment poses no significant limitation on Plaintiff's ability to perform basic work activities. See id. According to Plaintiff and the DOT, his past relevant work as a warehouse manager, as generally performed, requires "clarity of vision at 20 inches or less." ECF No. 10, pgs. 11-12 (citing the DOT). While the ALJ found that Plaintiff's vision is limited to 20/40 bilaterally with corrective lenses, this simply means that Plaintiff sees at 20 feet what a person with unimpaired eyesight can see at 40 feet. In other words, 20/40 visual acuity is a measure of Plaintiff's ability to see at distance. Plaintiff has cited no evidence indicating that he lacks frequent clarity of vision at 20 inches or less.

Finally, as to Plaintiff's argument that he cannot engage in his past relevant work as generally performed because he can only stand and/or walk less than two hours and because he requires additional 15-minutes breaks, the Court finds no error.  Specifically, the additional limitations to which Plaintiff refers are based on limitations which are not supported by the record or found by the ALJ.  These additional limitations are those opined by Dr. Patel's opinion, which the ALJ properly discounted for the reasons discussed above.

### IV.  CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment, ECF No. 10, is denied;

2.    Defendant's motion for summary judgment, ECF No. 12, is granted;

3.    The Commissioner's final decision is affirmed; and

4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated:  March 9, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE